# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FRANK RIZZO MONUMENT COMMITTEE,** | : | |
| **Plaintiff,** | : | |
| | : | **Case Number** |
| **V.** | : | **2:20-cv-03245-CDJ** |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| **Defendants.** | : | |
| | : | |

## ORDER

     **AND NOW,** this ____day of _____, 2020, upon consideration of Defendants City of Philadelphia and Mayor James Kenney's **Motion to Dismiss**, and Plaintiff's Response in Opposition thereto, it is hereby **ORDERED** that the Motion is **GRANTED** and the Complaint is dismissed with prejudice.

 

                                                  _____

                                                                    J.

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FRANK RIZZO MONUMENT COMMITTEE,** | : |
| **Plaintiff,** | : |
| | : |
| | : **Case Number** |
| **V.** | : **2:20-cv-03245-CDJ** |
| | : |
| **CITY OF PHILADELPHIA, et al.,** | : |
| **Defendants.** | : |
| | : |

## DEFENDANTS' MOTION TO DISMISS

Defendants, the City of Philadelphia and Mayor James Kenney, file this Motion to Dismiss Plaintiff's Complaint under Rule 12(b)(6).  The Court should grant the motion for the reasons more fully explained in the accompanying memorandum.

WHEREFORE, the City respectfully requests that this Court grant the Motion and dismiss the Complaint with prejudice under Rule 12(b)(6).

CITY OF PHILADELPHIA LAW DEPARTMENT
MARCEL S. PRATT, CITY SOLICITOR

/s/ Benjamin Field
Benjamin Field
Divisional Deputy City Solicitor
Jonathan Cooper
Deputy City Solicitor
Lydia Furst
Deputy City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
(215) 683-5024
benjamin.field@phila.gov

Dated: July 22, 2020

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FRANK RIZZO MONUMENT COMMITTEE,** | : | |
| **Plaintiff,** | : | |
| | : | **Case Number** |
| **V.** | : | **2:20-cv-03245-CDJ** |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| **Defendants.** | : | |
| | : | |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

CITY OF PHILADELPHIA LAW DEPARTMENT
MARCEL S. PRATT, CITY SOLICITOR

By: Benjamin Field, Esq.
Divisional Deputy City Solicitor
P.A. Bar No. 204569
Jonathan Cooper, Esq.
Deputy City Solicitor
P.A. Bar No. 316374
Lydia Furst, Esq.
Deputy City Solicitor
P.A. Bar No. 307450
 (215) 683-5024 / benjamin.field@phila.gov
*Attorneys for Defendants*

Dated: July 22, 2020

Defendants, the City of Philadelphia and Mayor James Kenney (collectively, "Defendants" or "City"), by and through their undersigned counsel, hereby file this Motion to Dismiss Plaintiff Frank Rizzo Monument Committee's ("Plaintiff" or "Committee") Complaint.

I.    **INTRODUCTION**

This case concerns the City's recent emergency removal of a nine-foot, 2,000-pound bronze statue of Frank L. Rizzo (the "Statue"), the former Mayor and Police Commissioner of Philadelphia, from public display in front of the Municipal Services Building in Philadelphia. Plaintiff's Complaint asks this Court to order the City return the Statue to the Committee.  The Complaint should be dismissed under Rule 12(b)(6) because all three Counts in the Complaint fail to state a claim upon which relief can be granted.

The Complaint, its exhibits and the publicly available Executive Order authorizing the removal of the Statue establish the following:  (1) since the Committee donated the Statue to the City in 1998, the City has held legal title to the Statue free and clear of all encumbrances; (2) following dangerous attempts to destroy, burn, and topple the Statue during protests in Philadelphia in late May and early June of 2020, the City determined that immediate removal of the Statue was required to protect the public health, safety, and welfare; (3) the City moved the Statue to a secure location that has not been disclosed to either the Committee or the public; (4) the City has stated that it intends to maintain the Statue in its current secure location until a plan is developed for its future; and (5) once such a plan is developed by the City, the City will submit the plan for Philadelphia Art Commission review and approval as required by law.

When the Statue was commissioned for and donated to the City in 1998, the City and the Committee entered into a donation and maintenance agreement.  That agreement provides that the City has full and unencumbered title to the Statue and further gives the *City* the right to

1

determine whether the Statue poses a threat to public health, safety or welfare.  If the City makes

such a determination, the Agreement is clear that the City may remove, destroy, or dispose of the

Statue and has no obligation to notify the Committee or to provide the Committee an opportunity

to recover the Statue.  While the City therefore has no contractual obligation to provide the

Committee a reasonable opportunity to recover the Statute, the City will nonetheless provide the

Committee and members of the public a reasonable opportunity to be heard during the Art

Commission review process.

The Complaint fails as a matter of law and should be dismissed with prejudice.

## II.      FACTS[1] AND PROCEDURAL HISTORY

The Committee donated the Statue to the City in 1998 under a Donation and Maintenance

Agreement (the "Agreement," attached as Exhibit A to the Complaint).  From 1998 until June

2020, the Statue by sculptor Zenos Frudakis was displayed in front of the Municipal Services

Building in Philadelphia.  *See* Compl. ¶¶ 4, 5, 8 (Doc. No. 1-1).  On June 2, 2020, Mayor

Kenney signed an Executive Order (the "Executive Order") authorizing the removal of the

Statue.  *See id.* at ¶ 7.  The following day, the City removed the Statue.  *Id.* at ¶¶ 7, 8.

The Agreement provides[2] that the City holds legal title to the Statue, "free and clear of all

encumbrances."  *See* Agmt. at ¶ 5(a) (Doc. No. 1-1 Ex. A).  The Agreement also includes

---

[1] For purposes of this Motion to Dismiss only, the City takes the facts as pleaded to be true.

[2] In evaluating a motion to dismiss, the court may consider "matters of public record, exhibits attached to the complaint, and undisputedly authentic documents" filed with the motion.  *Delaware Nation v. Pennsylvania,* 446 F.3d 410, 413 n.2 (3d Cir. 2006) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)); *see also Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 127 (3d Cir. 2016) (noting same).  Because Plaintiff attaches the Agreement to its Complaint, and because it forms the basis for Plaintiff's Complaint, the Court may consider the Agreement at this stage.

provisions explicitly addressing removal, destruction, or disposition of the Statue.  Under the

Agreement, the City may determine that "immediate destruction or removal of the [Statue] is

necessary to protect the health, safety or welfare of the public."  *See id.* at ¶ 7(c).  If the City

makes such a determination, it is "not obligated to notify Provider prior to destruction or removal

of the Work by the City."  *Id.*  And while the Agreement does contain separate provisions

requiring the City to provide the Committee with an opportunity to recover the work, those

provisions make clear that they do not apply if the City determines that destruction or removal is

necessary to protect the health, safety or welfare of the public.  *See id.* at ¶¶ 7(b) ("Except as set

forth under Subparagraph 7c. . . ."), 7(c), 7(f) ("Except as set forth under Subparagraph 7c. . . .")

(Doc. No. 1-1 Ex. A).

The City's June 3, 2020 removal of the Statue was based on public health and safety

concerns.  As set forth in the Executive Order,[3] "peaceful demonstrations regarding [George]

Floyd's death and police violence against people of color began in Philadelphia early in the day

on May 30, 2020 and some individuals, utilized the occasion of the protests to carry out severe

and unprecedented acts of vandalism, property damage, rioting, and/or looting . . ."  Exec. Order

at 1 (Doc. No. 4-1).  During the protests, the Statue was "subject to numerous attempts by

enormous crowds to demolish, light on fire, excavate, smash, and topple it—risking severe injury

and death to nearby persons and causing damage to other City property . . . "  *Id.*  The Executive

Order also explained that the presence of the Statue in front of the Municipal Services Building

had placed the building – and the critical data, facilities, infrastructure, and technology that the

building holds – at significant risk of damage and destruction.  *See id.* at 2.

---

[3] The court may consider matters of public record filed with this motion.  *See supra* at
n.2.  Municipal ordinances and statements - when publicly available on the municipality's
website - are matters of public record subject to judicial notice.  *See, e.g., Hena v.*

On June 2, 2020, the City determined that the Statue posed a threat to the public health, safety, and welfare.  *Id.* at 3.  The Executive Order accordingly authorized the immediate removal of the Statue from public display.  *Id.* at 3.  It further directed that:

> The Statue or its parts should be placed in secure storage by the Department of Public Property until such time as a plan is developed to donate, relocate, destroy, or otherwise dispose of the Statue.  When such a plan is developed, it may be presented to the Philadelphia Art Commission for approval.

*Id.*  The Statue was removed and transported to secure storage early in the morning on June 3, 2020.  *See* Compl. ¶ 8 (Doc. No. 1-1).

The Complaint vaguely alleges that the Statue was "possibly damaged or destroyed in the process" of removal.  Compl. ¶ 10 (Doc. No. 1-1).  The Complaint also attaches a photograph of the Statue in the back of a flatbed truck and alleges that this image shows the Statue being "disregarded."  *See id.* at ¶ 14 & Ex. D.  The Complaint does not indicate when the photograph was taken or provided to the Committee, *see id.* at ¶ 14, but the photograph shows the Statue in one piece and without any visible damage.  *See id.* at Ex. D.

On June 15, 2020, counsel for the Committee sent a letter to the Mayor and the City

---

*Vandegrift,* No. 18-762, 2020 WL 1158640, at *25 (W.D. Pa. Mar. 10, 2020).  Indeed, the Eastern District of Pennsylvania has specifically recognized that "[p]ages found on the City of Philadelphia Website are matters of public record."  *Stein v. City of Philadelphia,* No. 15-6829, 2013 WL 6408384, at *9 n.10 (E.D. Pa. Dec. 5, 2013); *see also Sturgeon v. Pharmerica Corp.*, 438 F.Supp.3d 246, 259 (E.D. Pa. 2020) (court can take judicial notice of information on government websites at motion to dismiss stage as it is self-authenticating).  Here, in resolving this motion to dismiss, the Court can take judicial notice of the Executive Order because it is publicly available on the City's website, there can be no doubt as to its authenticity, and it is referenced in the Complaint.  *See* Executive Order, *available at* https://www.phila.gov/media/20200602213153/Order-to-Remove-Rizzo-Statue-June-2-2020.pdf.

Solicitor demanding that the Statue's location be disclosed to the Committee so that the Committee could "recover" the Statue.  *See* June 15, 2020 Letter at 2 (Doc. No. 1-1 Ex. B).  In their letter, the Committee invoked inapplicable clauses of the Agreement that require notice and an opportunity for the Committee to recover the Statue ***except*** where the City has determined that removal, destruction, or disposition of the Statue is needed to protect the health, safety, or welfare of the public.  *See id.* at 2.

The City responded on June 24, 2020.  The City explained that the Statue was removed to protect the public health, safety and welfare and that the provisions of the Agreement cited by counsel for the Committee were inapplicable.  *See* June 24, 2020 Letter at 1 (Doc. No. 1-1 Ex. C).  The City confirmed that the Statue would continue to be stored in a secure location until a plan for its future was finalized by the City and approved by the Art Commission.  *See id.* at 2.  The City also confirmed that the Committee would have the opportunity to provide input into potential plans by the City in connection with any applicable laws requiring public comment.  *Id.*

Despite the City's assurances regarding the safety of the Statue and commitment to a public Art Commission process that would include an opportunity for input by the Committee, the Committee filed a Complaint in the Philadelphia Court of Common Pleas on June 29, 2020.  The Complaint seeks an injunction and writ of mandamus based upon the Agreement and the City Charter.  *See* Compl. at Counts I and II (Doc. No. 1-1).  The Committee also asserts a claim based upon the Fourteenth Amendment and 42 U.S.C. § 1983.  *See* Compl. at Count III (Doc. No. 1-1).  On July 1, 2020, the Committee filed a Motion for Temporary Restraining Order and Preliminary Injunction.  On the same day, the City filed a Notice of Removal in this Court.  *See* Notice of Removal (Doc. No. 1).

On July 2, 2020, the Committee filed a Motion for Temporary Restraining Order and

5

Preliminary Injunction.  *See* Motion (Doc. No. 3).  On the same day, the Court held a telephone

conference with counsel regarding the Motion.  On July 3, 2020, the City submitted a letter

confirming the parties' understanding regarding the City's storage of the Statue while the Motion

is pending.  *See* Doc. No. 4.  In the letter, the City stated that it "does not have – nor has it ever

had – any plans to destroy the Statue."  The letter also confirmed that "[t]he City will also not

take any steps to alter or destroy the Statue prior to the Court's decision on the merits of

Plaintiff's pending Motion (Doc. No. 3), absent some unforeseeable emergent circumstance" and

that "[i]n the unlikely event that any such emergent circumstance occurs before the Court issues

a decision on Plaintiff's pending Motion, the City will seek approval from this Court before

taking any action to alter or destroy the Statue."  *Id.*  On July 16, 2020, the City filed a Response

in Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.

*See* Doc. No. 5.

### III.   LEGAL STANDARD

The applicable standard for a Rule 12(b)(6) motion is well-settled.  Under this Rule, the

Court must dismiss an action on motion made before a responsive pleading is filed, when a

complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

"[A] plaintiff's obligation to provide the 'grounds' of his "entitle[ment] to relief" requires more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqball*, 556

U.S. 662, 678-79 (2009) (stating that a Complaint must contain something more than "naked

assertion[s]" devoid of "further factual enhancement.").  "The basic principle that a court must

accept all allegations as true is inapplicable to either legal conclusions or [t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory statements."  *Argueta v. U.S.

Immigration and Customs Enforcement*, 643 F.3d 60, 72 (3d Cir. 2011) (quoting *Iqbal*, 556 U.S.

at 678).

## IV.   ARGUMENT

All three Counts of the Complaint fail as a matter of law.  Counts I and II, for injunctive

and mandamus relief, fail to state a claim because even assuming the truth of facts alleged in the

Complaint, the City's actions related to the Statue are wholly consistent with both the Agreement

and the City Charter.  Count III fails for multiple reasons, explained in Section IV.C below.  The

Complaint should be dismissed in its entirety, with prejudice.

### A.   COUNTS I AND II FAIL BECAUSE THE CITY HAS COMPLIED WITH THE AGREEMENT.

Even assuming all well-pled allegations in the Complaint are true, the City has fully

complied with the terms of the Agreement and therefore the Committee's claims for injunctive

and mandamus relief (Counts I and II) based upon the Agreement fail.  As the Executive Order

that the Committee referenced in its Complaint states, the Statue was recently the target of

dangerous attempts to burn, topple, and destroy it.  *See* Executive Order at 1 (Doc. No. 4-1).  The

City's emergency removal of the Statue was based upon the danger to public health, safety, and

welfare that the continued public display of the Statue presented, and therefore the City has no

obligation to provide notice to the Committee or to provide the Committee an opportunity to

recover the Statue.

Pennsylvania law governs the interpretation of the Committee's contract-based claims.

Under Pennsylvania law, "it is well established that the intent of the parties to a written contract

is to be regarded as being embodied in the writing itself, and when the words are clear and

unambiguous the intent is to be discovered only from the express language of the agreement."

*Steuart v. McChesney*, 444 A.2d 659, 661 (1982) (*citing Estate of Breyer*, 379 A.2d 1305 (Pa.

1977); *Felte v. White*, 302 A.2d 347 (Pa. 1973); *East Crossroads Center, Inc. v. Mellon-Stuart*

7

*Co.*, 205 A.2d 865 (Pa. 1965); *Siciliano v. Misler*, 160 A.2d 422 (Pa. 1960); *Kennedy v. Erkman*, 133 A.2d 550 (Pa. 1957); *Atlantic Refining Co. v. Wyoming National Bank of Wilkes-Barre*, 51 A.2d 719 (Pa. 1947). Indeed, as the Third Circuit has made clear, such inquiry "does not require a search for the subjective intent of the parties, but rather centers on the intent embodied in the language that the parties chose to memorialize their agreement." *Williams v. Metzler*, 132 F.3d 937, 947 (3d Cir. 1997) (citations omitted). Therefore, the task focuses on the "terms of the agreement as manifestly expressed," and not "as, perhaps, silently intended." *Steuart*, 444 A.2d at 661. Such analysis of contract interpretation is a matter of law, *Grant v. Southwestern Pa. Water Auth.*, 601 A.2d 1359, 1360 (Pa. Cmwlth. 1992), and where a court can determine the meaning of a contract on its face, the contract is unambiguous. *Id.* at 1361; *Diet Drugs*, 525 F. App'x 140, 142 (3d Cir. 2013) ("[W]hen a term in an agreement is clear and unambiguous, its meaning must be determined from the four corners of the contract" as a matter of law).

The language of the Agreement is clear and the Court need not look beyond the four corners of the Agreement. The City is expressly permitted to immediately remove or destroy the Statue if the City, in its discretion, determines that removal or destruction of the Statue is in the interest of the public health, safety, or welfare. *See* Agreement at ¶ 7(c) (Doc. No. 3-1 Ex. A). Further, the Agreement explicitly provides that when the City determines that it must remove or destroy the Statue to protect public health, safety, or welfare, then the City has no obligation to notify the Committee in advance or to provide the Committee a reasonable opportunity to recover the Statue. *See* Agreement at ¶¶ 7(b) ("Except as set forth under Subparagraph 7c. . . ."), 7(f) ("Except as set forth under Subparagraph 7c. . . .") (Doc. No. 3-1 Ex. A). The Agreement clearly and unequivocally provides the City with unilateral authority to make decisions regarding removal, disposition, or destruction of the Statue in circumstances involving public health and

safety.

As explained above, during the protests in Philadelphia over the killing of George Floyd and police brutality, protestors attempted to topple the Statue, light it on fire, and destroy it. *See* Executive Order at 1 (Doc. No. 4-1). The City was concerned that if the Statue remained in its public location, such efforts would be successful and individuals near the Statue would be injured or killed. *See id.* In addition, the presence of the Statue in front of the Municipal Services Building had placed the building – and the critical data, facilities, infrastructure, and technology that the building holds – at significant risk of damage and destruction. *See id.* at 2. The City made the obvious determination that the Statue posed a risk to public health and safety, removed it from public display, and transported it to secure storage. The Statue will remain in a concealed and secure location until a plan is developed by the City and approved by the Art Commission. *Id.* at 3.

Under the Agreement, the City is not required to provide notice to the Committee, to inform the Committee of the Statue's location, or to provide the Committee with an opportunity to recover the Statue, because the City has reasonably determined that public health, safety, and welfare are at risk.[4] It cannot be disputed that the City has made such a determination here, triggering the explicit exception set forth in Section 7 of the Agreement. Accordingly, the City has fully complied with the Agreement and the Committee's claims based upon the Agreement fail to state a claim upon which relief can be granted.

---

[4] Even assuming *arguendo* that the Committee has a right here to recover the Statue (it does not), the City is still not violating the Agreement. The City has not done anything to permanently dispose of the Statue. To the contrary, the Statue was removed from public display where it was the object of attacks and brought to a concealed and secure location. The Art Commission review process will allow the Committee ample opportunity to make its case for why the Statue should be given to the Committee and to oppose any plan for the future of the Statue with which it disagrees.

**B.      COUNTS I AND II FAIL BECAUSE THE CITY'S ACTIONS ARE CONSISTENT WITH THE CITY CHARTER.**

The Committee's claims for injunctive and mandamus relief based upon the City Charter fail because the City's actions are consistent with the City Charter.  As the Executive Order and the exhibits attached to the Complaint demonstrate, the City has consistently stated that it will submit a plan for the Statue to the Philadelphia Art Commission for approval.  *See* Executive Order at 3 (Doc. No. 4-1) ("The Statue or its parts should be placed in secure storage by the Department of Public Property until such time as a plan is developed to donate, relocate, destroy, or otherwise dispose of the Statue.  When such a plan is developed, it may be presented to the Philadelphia Art Commission for approval."); Compl. at Ex. C ("When the City decides upon a plan for its final disposition, the City will comply with any applicable law that requires engagement of the public, including your client's Committee, in connection with that plan."). The City is thus complying with the requirements of Section 4-606(e) of the Philadelphia Home Rule Charter, which provides that the Art Commission shall "[a]pprove the removal, relocation or alteration of any existing work of art in the possession of the City."  The City has also assured the Committee that it will engage with the Committee during the Art Commission process.

**C.      THE COMMITTEE'S SECTION 1983 CLAIM FAILS AS A MATTER OF LAW.**

Count III of the Complaint asserts a 14th Amendment Due Process claim against Mayor Kenney and the City under 28 U.S.C. § 1983.[5]  The Committee contends it had property rights to the Statue pursuant to the Agreement and unspecified common law, and that Defendants "purposely deprived Plaintiff of its property rights without just compensation" in violation of the

---

[5] Although this statute does not exist, it appears Plaintiff's claims arise under 42 U.S.C. § 1983 and Defendants analyze them accordingly.

10

Due Process clause.  *See* Compl., at ¶¶ 55-56 (Doc. No. 1-1).  These claims are not actionable for multiple reasons.

      1.      **The Committee's Underlying Due Process Claims Fail as a Matter of Law as to Both Defendants.**

The Committee generically alleges it has property rights to the Statue, Defendants purposely deprived it of those property rights without just compensation, and that such deprivation was a due process violation.  Compl. at ¶¶ 54-58 (Doc. No. 1-1).  The Committee does not specify whether its claim sounds in procedural or substantive due process, nor does it allege the requisite elements as to either species of due process claim.  *See id.*  Instead, the Committee simply alleges a *contract* violation, and then concludes that this amounts to a *constitutional* violation.  Additionally, there are simply no facts before the Court – whether pled in the Complaint or contained in the Executive Order and/or any Exhibits to the Complaint – that could give rise to a substantive or procedural due process claim.

      a)      *The Committee Fails to Plead an Actionable Substantive Due Process Claim*

In order to establish a Fourteenth Amendment substantive due process violation, a plaintiff must prove (s)he was deprived of fundamental rights as a result of "arbitrary, wrongful government actions."  *See, e.g., Munoz v. City of Phila.*, No. 05-5318, 2006 WL 328346, at *6 (E.D. Pa. Feb. 10, 2006) (quoting *Learner v. Fauver*, 288 F.3d 532, 546 (3d Cir. 2002)).  "Arbitrary" action is not akin to "incorrect" action, and "*only the most egregious official conduct can be said to be arbitrary in the constitutional sense.*"  *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (emphasis added) (citations and additional quotations omitted).  To satisfy this requirement, the plaintiff must establish that the interest at stake is protected by the due process clause (i.e. life, liberty, property), and that the deprivation of that interest "shocks the

conscience." *See Chainey v. Street,* 523 F.3d 200, 219 (3d Cir. 2008); *Lewis*, 523 U.S. at 846.

i)     The Committee Fails to Plead a Property Right

When the challenged government action involves an alleged deprivation of property, the threshold issue is whether the challenging party has a "property interest" in the property at issue. *See, e.g., Boyanowski v. Cap. Area Intermed. Unit*, 215 F.3d 396, 403 (3d Cir. 2000); *Norwest Bank Nebraska v. W.R. Grace & Co.*, 960 F.2d 754, 759 (8th Cir. 1992).  The Supreme Court has explained that "[b]ecause the Constitution protects rather than creates property interests, the existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.'" *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)).  Put differently, a plaintiff asserting the deprivation of a property interest must first be able to demonstrate the *existence* of such an interest (i.e. by pointing to its source).  *See, e.g., Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp.3d 573, 594 (E.D. La. 2016).  A person's "unilateral expectation" is insufficient to establish a property interest for due process purposes. *See Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).  Instead, the interest must rise to the level of a "legitimate claim of entitlement" to the property.  *Id.*

The Committee alleges that its right to relief "arises from the Agreement, which contains specific provisions mandating the City allow Plaintiffs the opportunity to recover the Statue before the City destroys or otherwise disposes of it."  Compl. ¶15 (Doc. No. 1-1).  The Committee further alleges that "Plaintiff has valid property rights to the Statue under the Agreement and common law." *Id.* at ¶55.  But the Committee is mistaken; the Agreement does not create a property right, much less a property interest that can serve as the basis of a due process claim.

12

The Agreement unambiguously vests the title of the Statue in the City, free and clear of all encumbrances.  *See* Agreement at ¶ 5(a) (Doc. No. 1-1 Ex. A) ("Title.  Legal title, free and clear of all encumbrances, to the Work shall pass to the City upon installation of the Work.").  Further, although in some circumstances the City has an obligation to provide the Committee with a right to recover the Statue, the Agreement contains a clear and unambiguous exception to this requirement when public safety is at issue.  *See id.* at ¶ 7(c).  And each of the provisions that articulate a requirement that the City provide the Committee with the ability to recover the Statue expressly note that when Subparagraph 7(c) is at issue, it controls.  *See* Agreement ¶¶7(b), 7(f) (both beginning with the clarification "Except as set forth under Subparagraph 7c").  The plain language of the Agreement is clear.  The City holds the unencumbered title to the Statue and because the actions at issue were a matter of public safety, the provisions regarding the Committee having a right to 'recover' the Statue are not at issue.  The Committee, therefore, has no cognizable property interest for a due process claim.

Certainly it is true that a property interest exists when a plaintiff "has an enforceable expectation under . . . [a] contract.  *See Barrett v. Ross Twp. Civil Serv. Comm'n*, 55 A.3d 550, 556 (Pa. Commw. Ct. 2012) (citing *Amesbury v. Luzerne County Institution District*, 27 Pa.Cmwlth. 418, 366 A.2d 631, 633 (1976).  But a person's "unilateral expectation" is insufficient to establish a property interest for due process purposes.  *See Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).  The interest must rise to the level of a "legitimate claim of entitlement" to the property.  *Id.*  Here, Plaintiffs have no such claim.  The Agreement is clear that the City holds "unencumbered" title to the property.  And the Agreement makes clear that the Committee only has a right to recover the property in certain circumstances and does not have such a right where public safety is at issue.  That is the case here, and the Committee's

"unilateral expectation" that the City has to return the property nonetheless does not create a property interest that can be said to implicate due process.

Plaintiff's allegation that it has a property interest in the Statue is based on Plaintiff's apparent unilateral expectation.  It is not supported by the plain language of the Agreement.  This is not a "legitimate claim of entitlement" to the Statue and this Court should dismiss Plaintiff's constitutional claims.

ii)    The alleged actions do not "shock the conscience"

Even if the Court were to determine that Plaintiff had established a property interest for the purposes of a due process analysis, Plaintiff cannot satisfy the requirement that it be able to show the alleged deprivation "shocks the conscience."  *See, e.g., Chainey v. Street,* 523 F.3d 200, 219 (3d Cir. 2008); *Lewis*, 523 U.S. at 846.  Although the "shocks the conscience" standard generally applies to all species of substantive due process claim, the type of conduct required for its satisfaction turns on the exigency of the situation and amount of time the official has to act. *See Vargas v. City of Philadelphia*, 783 F.3d 962, 973 (3d Cir. 2015).

When a government official is faced with a "hyperpressurized environment" requiring a "snap judgment," they can only be held liable if they had an *"actual intent to cause harm."  See id.* (citing *Sanford v. Stiles*, 456 F.3d 289, 308-09 (3d Cir. 2006)).  On the other end of the spectrum, when "deliberation is possible and officials have the time to make unhurried judgments," courts apply a deliberate indifference standard (i.e. "conscious disregard of a substantial risk of serious harm").  *See id.* (additional quotations and citations omitted).  Finally, a middle category exists for decisions made with "hurried deliberation" (i.e. that must be made in a "matter of hours or minutes").  *Haberle v. Troxell*, 885 F.3d 170, 177 (3d Cir. 2018) (citations and quotations omitted).   In those circumstances, the action may be conscious-shocking only if

14

it is found to exhibit "conscious disregard of a *great risk* of serious harm rather than substantial risk." *Id.*

    As discussed above, the Committee cannot state a substantive due process claim because it had no property interest in the Statue under the Agreement or otherwise.  But even if it could, the Committee has not pled – nor could it in these circumstances – the type of arbitrary and egregious conduct that "shocks the conscience."  The Executive Order clearly demonstrates that Mayor Kenney issued the removal of the Statue in response to a devolving public safety emergency that the mere presence of the Statue was exacerbating, and that the Statue remains in secure storage.  *See* Executive Order (Doc. No. 4-1).   This is the type of "hyperpressurized" situation that is only actionable when the government official acts with an "intent to harm," a standard the Committee neither addresses nor could plausibly assert facts to support.  But even assuming, *arguendo*, that the Court views this action under the *least permissible lens* – that which imposes liability for deliberate indifference – Count III of the Complaint still fails.  The Statue was removed in the midst of a public safety emergency – notably one that its own presence was exacerbating – in accordance with the Agreement.  *See id; see also* Agreement at § 7(c).  Neither the City's emergency removal of the Statue nor the City's subsequent retention of the Statue in its present condition – actions which no doubt protected the Statue from near-certain destruction – rise close to the type of "egregious" government action that runs afoul of due process, whether under a "deliberate indifference" or "intent to harm" standard.  *See, e.g., Haberle v. Troxell*, 885 F.3d 170, 177 (3d Cir. 2018).

    b)    *The Committee Fails to Plead an Actionable Procedural Due Process Claim*

    To the extent the Committee asserts a procedural due process claim, this claim also cannot proceed.  As set forth above, the Committee has no property interest in the Statue, which

defeats any procedural due process claim in its entirety.  And even if it did, the removal of the Statue without notice to the Committee was not a constitutional violation.

A procedural due process claim requires a plaintiff to allege that (1) (s)he was deprived of life, liberty, or property, and (2) the procedures available to the plaintiff did not provide due process of law.  *Hill v. Bor. Of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006).  When the government seizes property, the notice provided should be "reasonably calculated, under all the circumstances, to apprise interested parties of the . . . action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust,* 339 U.S. 306, 314 (1950); *see also Mennonite Board of Missions v. Adams,* 462 U.S. 791, 795 (1983).  While a person should usually receive notice of and opportunity to contest a property deprivation before it occurs, "where there is the necessity of quick action by the state, or where providing any meaningful pre-deprivation process would be impractical, the Government is relieved of the usual obligation to provide a pre-deprivation hearing."  *Munoz v. City of Union City*, 481 F. App'x 754, 758 (3d Cir. May 11, 2012) (quoting *Elzmere Park Club, L.P., v. Town of Elsmore*, 542 F.3d 412, 417 (3d Cir. 2008)).

When a government official invokes a discretionary emergency procedure in response to an emergency, the official can only be liable for a procedural due process violation if "such invocation is arbitrary or amounts to an abuse of discretion."  *Elsmere Park Club*, 542 F.3d, at 418-19.  Proportional responses to emergent health and safety risks do not reach that threshold, and thus require no pre-deprivation hearing when circumstances compel the seizure or destruction of property.  *See id.* (due process did not require pre-deprivation hearing when town condemned apartments for significant mold issues, despite fact that town's investigation was "far from perfect," because public health threat justified the exigent action) (citing *Catanzaro v.*

16

*Weiden*, 188 F.3d 56, 62-63 (2d Cir. 1999)).  In these circumstances, the court need only

consider whether there exists adequate *post-deprivation* process to challenge the action.  *See,*

*e.g., Munoz v. City of Union City*, 481 F. App'x 754, 757-58 (3d Cir. May 11, 2012).

When due process claims arise out of an alleged breach of contract, procedural due

process is typically satisfied by the simple availability of a *post-deprivation breach of contract*

*claim* in state court.  *See, e.g., Lujan v. G&G Fire Sprinklers, Inc.*, 532 U.S. 189, 196-97 (2001)

(no procedural due process claim arising out of alleged violation of a public works contract

because the action was a contract claim which could be asserted in California state court); *Khan*

*v. Bland*, 630 F.3d 519, 532-33 (7th Cir. 2010) (holding that plaintiff was "afforded all the

process that was due by his available post-deprivation remedy of a state law breach of contract

action").  As the Seventh Circuit has explained, "[a]ll states provide judicial remedies for breach

of contract and these remedies will almost always provide all the process that is constitutionally

due, making the question whether the contract right was also a property right academic."

*Indiana Land Co., LLC v. City of Greenwood*, 378 F.3d 705, 710 (7th Cir. 2004).

This principle is especially well-settled when a plaintiff is *not* "presently entitled . . . to

exercise ownership dominion" over the allegedly deprived property, because in these cases their

asserted property interest "can be fully protected by an ordinary breach-of-contract suit."  *Lujan*,

532 U.S. at 196.  Put differently, a person does not have a "present entitlement" in property

subject to a contract when their interest is a non-possessory one wholly defined by – and thus

contingent upon – the terms of a contract.  *See id.*; *see also Ferrone v. Onorato*, 298 F. App'x

138, 140 (3d Cir. Oct. 31, 2008) (dismissing due process claim for funds allegedly owed to

plaintiff under loan agreement because claim was "a commonplace breach of contract dispute

clothed in federal question fleece."); *DeBoer v. Pennington*, 287 F.3d 748, 750 (9th Cir. 2002)

(applying *Lujan* and dismissing due process claim for city's termination of management agreement because the "contract here has not given rise to a greater interest than the contract itself" and state contract action provided adequate due process); *Khan,* 630 F.3d, at 532-33 (no actionable due process claim for funds claimed under contracts with county, when plaintiff had no "present entitlement" to funds and deprivation was "not particularly time sensitive," since breach of contract claim was available under state law); *Hughes v. Zurz*, 298 F. App'x 404, 417 (6th Cir. Oct. 6, 2008).

Here, the Committee has failed to plead any *facts* from which it could be inferred that the removal of the Statute and placement in storage without pre-deprivation notice to the Committee under the circumstances was an "abuse of discretion" or "arbitrary" in the constitutional sense. Similarly, Plaintiff has failed to plead that there exists no post-deprivation remedy for its alleged harms, nor pled facts as to the same.  These pleading deficiencies alone are fatal.  *See, e.g., Ahlers v. Rabinowitz*, 684 F.3d 53, 63-64 (2d Cir. 2012) (plaintiff failed to state procedural due process claim when he did not "allege whether formal-post-deprivation procedures were available."); *Routhier v. Goggins*, 229 F.Supp.3d 299, 309 (D. Vt. 2017) (plaintiff's failure to specifically mention post-deprivation procedures and their alleged inadequacies necessitated dismissal of due process claim).

More importantly, the Statue is a piece of tangible property in which the City holds legal title (*see* Agreement at § 5(a)), that the Committee has *never* been entitled to "exercise[] ownership dominion" over, and in which the Committee's purported rights are based solely and entirely on the Agreement.  *See, e.g., Lujan*, 532 U.S. at 196; *Onorato*, 298 F. App'x at 140.  For this reason, the instant breach of contract lawsuit is a wholly adequate process for the Committee to pursue its remedies.  *See id.*

And finally, Plaintiff exercised those remedies by filing the instant lawsuit *before* and *instead of* even attempting to utilize or engage in the City's stated administrative procedure for the Statue's disposition, despite the City's unequivocal statements that the Statue is secure, a plan is to be developed for its disposition which will then be presented to the Art Commission, and that the City will comply will any applicable law requiring public engagement – specifically including the engagement of the Committee – in connection with the plan.  *See* Exec. Order; *see also* Compl. at Ex. C.  The Committee has thus failed to adequately plead the absence of a viable remedy at law, and any procedural due process claim must be dismissed for these reasons as well.

### 2.    The Committee's Due Process Claim Against Mayor Kenney is Barred by Qualified Immunity.

Count III of the Complaint must also be dismissed as to Mayor Kenney under the doctrine of qualified immunity.  Government officials are immune from liability where their conduct "does not violate *clearly established statutory or constitutional rights* of which a reasonable person would have known."  *Argueta v. U.S. Immigration and Customs Enforcement*, 643 F.3d 60, 69-70 (3d Cir. 2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (emphasis added)).  The doctrine "seeks to ensure that defendants reasonably can anticipate when their conduct may give rise to liability by attaching liability only if the contours of the right violated are sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *United States v. Lanier*, 520 U.S. 259, 270-71 (1997) (internal quotations and citations omitted).  Government actors are protected by qualified immunity unless "existing precedent [has] placed the statutory or constitutional question beyond debate."  *See id.* at 2083.

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court discussed the two prongs which must be analyzed to determine whether a government official is entitled to qualified

immunity:  (1) whether the official's conduct, viewed in a light most favorable to the plaintiff, violated the constitution, and (2) whether the constitutional right at issue was "clearly established," such that a reasonable official would have understood that their actions were not lawful in the situation with which they were confronted.  *See id.* at 202.[6]  The Court explained that the inquiry as to whether the right was clearly established "must be undertaken in light of the specific context of the case, *not as a broad general proposition*."  *See id.* at 201 (emphasis added).  If there is no clearly established rule prohibiting the official from acting as (s)he did in the specific situation at issue, (s)he is entitled to qualified immunity.  *See id.* at 209.

In 2015, the Supreme Court reiterated that a right is only "clearly established" if the "violative nature of *particular* conduct is clearly established."  *Mullenix v. Luna*, 136 S.Ct. 305, 309 (2015).  "We have repeatedly told courts . . . not to define clearly established law at a high level of generality."  *Id.* (citations and quotations omitted).  And as explained by the Third Circuit most recently, "[e]xisting precedent is sufficient to place a constitutional question beyond debate and to defeat qualified immunity only if it is "*controlling authority in the relevant jurisdiction*" or if a "*robust consensus of cases of persuasive authority in the Court of Appeals* has settled the question."  *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 719 (3d Cir. 2018) (quoting *Mammaro v. NJ Div. of Child Prot. & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016) (emphasis added) (remaining citations and quotations omitted)).

Here, Mayor Kenney is entitled to qualified immunity because it is far from "clearly established" that the removal of the Statue violated any law, let alone the United States

---

[6] In *Saucier,* the Court actually held that the question of whether a constitutional right was violated must be answered *before* moving on to the "clearly established" analysis, but the Court retreated from this requirement eight years later in *Pearson v. Callahan*, 129 S.Ct. 808, 815-22 (2009).  Since *Pearson*, the evaluation consists of the same two questions but district courts can do the analysis in whatever order they see fit.  *See id.*

Constitution.  As set forth above, Mayor Kenney's decision to remove the Statue was clearly made in the interest of public health and safety and to prevent a dangerous situation from becoming even more dangerous.  *See* Executive Order (Doc. No. 4-1).  Even if the Statue's removal violated the Agreement – a notion Defendants reject as set forth above – qualified immunity nonetheless applies.  *See, e.g., Sauers,* 905 F.3d at 722-23 (rejecting notion that officer's guilty plea to crime of vehicular homicide prevented attachment of qualified immunity with respect to due process claim for the same actions, because the law was not "settled" at the time of the incident that an officer could be held constitutionally liable for such conduct).  To maintain a due process claim against Mayor Kenney (and assuming *arguendo* that the Committee can establish a property interest), the Committee must identify Third Circuit precedent, or a "robust consensus of cases" in the U.S. Court of Appeals at large, finding a due process violation in the same circumstances; namely, the safe, non-destructive removal of a structure that was *itself causing a significant threat to human safety* during an already escalating emergency.  *See, id.* at 719; *see also* Executive Order (Doc. No. 4-1).  Because no such precedent exists, the due process claim against Mayor Kenney is barred by qualified immunity.

### 3. The Committee's Due Process Claim Against the City Must be Dismissed because the Complaint Pleads no Facts to Support a Finding that the City Acted with "Deliberate Indifference."

Count III of the Complaint must be dismissed as to the City because the Committee pleads no facts that could conceivably give rise to a § 1983 claim against the City.  Plaintiffs seeking to impose § 1983 liability against a municipality must state a claim for relief under the standards set forth in *Monell v. Department of Social Services of New York City,* 436 U.S. 658

(1978).[7]  In adjudicating *Monell* claims, "courts have recognized a two-path track to municipal liability under § 1983, depending on whether the allegation is based on municipal policy or custom."  *Mulholland v. County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (citations and quotations omitted).  A policy occurs when a decisionmaker with final authority "issues an official proclamation, policy, or edict," while a custom occurs when practices are "so permanent and well-settled as to virtually constitute law."  *See id.* (citations and quotations omitted).  "[A] policy cannot ordinarily be inferred from a single instance of illegality."  *Losch v. Bor. Of Parkesburg*, 736 F.2d 903, 911 (3d Cir. 1984); *see also McKenna v. City of Philadelphia*, 1992 WL 191134, at *3 (E.D. Pa. Aug. 3, 1992) (following *Losch)*.

Moreover, a plaintiff's proper identification of an offending policy or custom is not enough to state a *Monell* claim.  As explained by the Supreme Court:

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the *requisite degree of culpability* and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.  *Board of Cnty. Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997) (emphasis added).

The "requisite degree of culpability" referenced by the Supreme Court is that of *deliberate indifference* to the rights of the plaintiff or those similarly situated.  *See id.* at 407, 411; *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (if a municipal policy or custom "does not facially violate federal law, causation can only be established by demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious

---

[7]  "A municipality may not be held liable for constitutional torts under § 1983 on a vicarious liability theory rooted in *respondeat superior." Mulholland v. County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013).

consequences.") (quotations and citations omitted); *see also Vargas v. City of Philadelphia*, 783 F.3d 962, 974 (3d Cir. 2015).  Deliberate indifference "is a stringent standard of fault, requiring that a municipal actor disregarded a known or obvious consequence of his action."  *Vargas*, 783 F.3d at 974 (quoting *Brown*, 520 U.S. 397 at 410).

Here, the Committee's § 1983 claim against the City should be dismissed.  As an initial matter, the failure of Plaintiff's underlying due process claim against Mayor Kenney (*see supra*) requires the dismissal of the Committee's *Monell* claim.  A plaintiff can only maintain a claim for municipal liability if they can first establish a constitutional violation by a municipal actor. *See, e.g., City of Los Angeles v. Heller*, 475 U.S. 796, 798-99 (1986); *Kneipp v. Tedder*, 95 F.3d 1199, 1212 n.26 (3d Cir. 1995) (§ 1983 claim cannot stand if the underlying constitutional claim is invalid); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1149-50 (3d Cir. 1995) (unless plaintiff establishes a constitutional injury, it is irrelevant for purposes of § 1983 liability whether municipality's policies caused an injury).  Because the underlying due process claim should be dismissed for the reasons above, the Committee's *Monell* claim must also be dismissed.

The Committee's *Monell* claim also fails independently because the Complaint pleads no facts from which the Statue's removal could be found to exhibit "deliberate indifference."  The Committee alleges no City practice of improper monument removals, nor does it assert that the City employs a policy that has led to a pattern of similar actions.  Instead, the Committee complains of a single decision by the Mayor undertaken specifically to avoid further damage to the City of Philadelphia and danger to its citizens.  The Committee neither alleges that this amounts to deliberate indifference nor pleads *facts* indicating the same.  *See generally* Compl. The Committee's *Monell* claim thus fails.

Accordingly, because the Committee fails to plead adequate facts giving rise to a claim for municipal liability, a claim against Mayor Kenney in his individual capacity, or a 14th Amendment Due Process claim under any theory, and because no actionable facts can be inferred from the pleadings, Count III of the Complaint must be dismissed in its entirety.

## V.     CONCLUSION

For all of the foregoing reasons, the Complaint should be dismissed with prejudice.

CITY OF PHILADELPHIA LAW DEPARTMENT
MARCEL S. PRATT, CITY SOLICITOR

/s/ Benjamin Field
Benjamin Field
Divisional Deputy City Solicitor
Jonathan Cooper
Deputy City Solicitor
Lydia Furst
Deputy City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
(215) 683-5024
benjamin.field@phila.gov

Dated: July 22, 2020

24

## CERTIFICATE OF SERVICE

I, Lydia Furst, hereby certify that I caused to be served today one copy of the foregoing upon the persons and in the manner indicated below:

Via CM/ECF:

George Bochetto, Esq.
Bochetto & Lentz PC
1524 Locust St
Philadelphia, Pa 19102
215-735-3900
gbochetto@bochettoandlentz.com
*Attorney for Plaintiff*

*/s/ Lydia Furst*
Lydia Furst
City of Philadelphia Law Department

Dated: July 22, 2020