IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK L. RIZZO MONUMENT COMMITTEE, | : | |
| *Plaintiff*, | : | |
| | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 20-3245 |
| | : | |
| CITY OF PHILADELPHIA and MAYOR JAMES KENNEY, | : | |
| *Defendants*. | : | |

**MEMORANDUM**

**JONES, II   J.**                                                                                       **January 12, 2022**

This matter was originally filed in the Philadelphia County Court of Common Pleas. It was removed to this Court by Defendants, who then filed a Motion to Dismiss Plaintiff's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Count III of Plaintiff's Complaint—raising a claim under 42 U.S.C. § 1983—will be dismissed, the Court will decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, and the matter will therefore be remanded to state court.

**I.       FACTUAL AND PROCEDURAL BACKGROUND**

A statue of former Philadelphia Mayor Frank Rizzo (the "Statue") "once stood in front of the Municipal Services Building at 1401 John F. Kennedy Boulevard in Philadelphia." Plaintiff's Complaint ("Compl.") at ¶ 4. The Statue was commissioned by the Frank L. Rizzo Monument Committee (the "Committee" or "Plaintiff"), which donated the Statue to the City of Philadelphia pursuant to a "Donation and Maintenance Agreement" dated December 30, 1998 (the "Agreement"). Compl. at ¶ 6.

On June 2, 2020, Mayor James Kenney issued an executive order entitled: "Emergency Order to Remove the Frank Rizzo Statue from Display on City Property Due to Its Threat to

Public Health, Safety, and Welfare" (the "Emergency Order").  Compl. at ¶ 7; Plaintiff's Opp'n at Ex. F.  The Emergency Order stated, *inter alia*, that (i) "massive protests and demonstrations have erupted across the country, including here in Philadelphia, in response to the recent death of George Floyd, a Black man in Minneapolis who died after a white police officer knelt on his neck"; (ii) "the continued display of the Statue, because of its infamy and association with racism, bigotry, and police brutality, has enraged persons protesting Mr. Floyd's death and many others, and, once again, the Statue was subject to numerous attempts by enormous crowds [during the recent protests] to demolish, light on fire, excavate, smash, break, and topple it— risking severe injury and death to nearby persons and causing damage to other City property"; (iii) the City "expected [the Statue] to remain the target of further [such] attempts[,] . . . risking injury and death, further damage to City property, and unnecessary diversion of City and other resources"; and, as a result (iv) "immediate removal of the Statue [wa]s necessary to protect the health, safety, and welfare of Philadelphians and City employees."  Pl.'s Opp'n at Ex. F.  The Emergency Order also specified "that section 7(c) of the Agreement allows the City to immediately remove the State to protect the health, safety, and welfare of the public without notification to the Committee."  Pl.'s Opp'n at Ex. F.

The Statue was removed on June 3, 2020 pursuant to the Emergency Order.  According to the Committee, "the Statue was removed under cover of night, with no process or input from the public or approval from the Philadelphia Art Commission."  Compl. at ¶ 8.  "On June 15, 2020, [the Committee] sent a letter inquiring about the Statue's condition and whereabouts."  Compl. at ¶ 11.  That letter expressed the Committee's desire and intention to recover the Statue from wherever it was being held by the City, citing Section 7(f) of the Agreement, which provides, in pertinent part, that "if the City shall at any time decide [] to remove the [Statue]

from . . . public display, or [] dispose of the [Statue], it shall give notice to the [Committee] and offer the [Committee] a reasonable opportunity to recover the [Statue]." Pl.'s Opp'n at Exs. A–B. The City responded via letter dated June 24, 2020, stating that the Statue was being held in a secure City facility, and would not be made available for the Committee to either reclaim or inspect it. Pl.'s Opp'n at Ex. C.

Unsatisfied with the City's response, the Committee filed its Complaint in state court against both the City and Mayor Kenney (collectively, "Defendants"), "seeking an injunction and writ of mandamus in order to compel Defendants to comply with the Agreement." Pl.'s Opp'n Br. at 3. The Committee's Complaint also included a claim under 42 U.S.C. § 1983, alleging that its due process rights had been violated. Compl. at ¶¶ 54–58. Defendants removed the case to this Court, invoking federal jurisdiction as a result of the Committee's due process claim. *See* Defs.' Notice of Removal.

In a worthwhile attempt to resolve this matter amicably, the parties agreed to pursue non-binding mediation. The Court held multiple mediation sessions with the parties and their counsel, but, despite the good-faith efforts of all involved, no final resolution was reached.[1] Accordingly, the Court now turns to Defendants' Motion to Dismiss Plaintiff's Complaint, which, for the reasons set forth below, will be granted in part.

## II.    STANDARD OF REVIEW

In ruling on a Rule 12(b)(6) motion, courts must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under

---

[1] During the course of the mediation process, the Committee shared with Defendants its proposal for the Statue in the event the Statue is returned to the Committee. Despite the parties' inability to reach a final settlement agreement in connection with that proposal, the Court notes that, in its opinion, the proposal was reasonable, sensible, and fair.

any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "To prevent dismissal, all civil complaints must [] set out sufficient factual matter to show that the claim is facially plausible." *Fowler*, 578 F.3d at 210 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* It is the "defendant [who] bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted." *McDonough v. State Farm Fire & Cas. Co.*, 365 F. Supp. 3d 552, 557 (E.D. Pa. 2019) (citing *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005)).

### III. DISCUSSION

#### A. Procedural Due Process Claim

The Committee has asserted a procedural due process claim based upon Defendants' removal of the Statue on June 3, 2020. The "due process of law" guarantee within the Fourteenth Amendment "essentially requires that the government provide a person notice and opportunity to be heard in connection with the deprivation of life, liberty[,] or property." *Nifas v. Beard*, Civ. A. No. 08-834, 2009 WL 3241871, at *11 (W.D. Pa. Oct. 6, 2009) (citing *Zappan v. Pa. Bd. of Prob. & Parole*, 152 F. App'x 211, 220 (3d Cir. 2005) ("The essential requirements of any procedural due process claim are notice and the opportunity to be heard.")). Accordingly, as

the Committee acknowledges, in order to state a procedural due process claim, it must first "'demonstrate that [it] was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property.'" Pl.'s Opp'n Br. at 15 (quoting *Biliski v. Red Clay Consol. Sch. Dist. Bd. Of Educ.*, 574 F.3d 214, 219 (3d Cir. 2009)).

The Committee argues that it was deprived of its property interest in the Statue given the manner in which the Statue was removed. *See* Pl.'s Opp'n Br. at 10. Specifically, it asserts that "Defendants removed the Rizzo Statue . . . without requesting that the Art Commission convene a [s]pecial [m]eeting to first provide the City with approval as required by the [Philadelphia Home Rule] Charter," and that "Defendants' decision to forgo [that] procedure[] denied Plaintiff procedural due process." *Id.* at 15. However, the scope of any property interest the Committee has in the Statue is defined by the Agreement, and the Committee's Brief acknowledges that the City had the right to remove the Statue under the circumstances it did pursuant to the "health-and-safety" provision contained within Section 7(c) of the Agreement. *See id.* at 7 ("When the City decided to remove the Statue from the premises pursuant to 7(c) it was not necessary for it to give prior notice of removal to Plaintiff.") (emphasis omitted). Accordingly, if Defendants' removal of the Statue was consistent with the parties' respective rights under the Agreement, then, to state the obvious, the Statue's removal could not have unlawfully infringed on the Committee's property interest. In other words, if, under the circumstances present at the time, Defendants had the right to remove the Statue without violating the Committee's property rights pursuant to the terms of the Agreement, then it simply cannot be that the Committee's property rights were somehow infringed for purposes of a procedural due process claim. This foundational inconsistency in the Committee's argument is fatal to its procedural due process claim. It has not plausibly alleged that the June 3rd removal of the Statue deprived it of a

property interest. Again, any property interest asserted by the Committee would flow from the terms of the Agreement; because there is no serious argument that the Statue's removal violated that Agreement, it could not have been unlawfully deprived of a property interest.

Insofar as the Committee contends that certain procedural provisions within the Philadelphia Home Rule Charter conferred upon it an individual interest protected by the Fourteenth Amendment, the Committee is incorrect. As the Third Circuit Court of Appeals has made clear: "The process afforded by state law is not relevant in determining whether there is a state created right that triggers due process protection." *Griffin v. Vaughn*, 112 F.3d 703, 709 n.3 (3d Cir. 1997). That principle followed from the Supreme Court's explanation in *Olim v. Wakinekona* that a "State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right." 461 U.S. 238, 250–51 (1983) (footnote omitted). *See also Steele v. Cicchi*, 855 F.3d 494, 508–09 (3d Cir. 2017) ("a valid due process claim will not automatically follow from [a] failure to abide by [certain] procedural requirements"); *United States v. Jiles*, 658 F.2d 194, 200 (3d Cir. 1981) ("The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension.") (quoting *Slotnick v. Staviskey*, 560 F.2d 31, 34 (1st Cir. 1977)); *Hayes v. Muller*, Civ. A. No. 96-3420, 1996 WL 583180, at *7 n.5 (E.D. Pa. Oct. 10, 1996) ("a state does not violate an individual's federal constitutional right to procedural due process merely by deviating from its own established procedures") (quoting *Lewis v. Dist. of Columbia Bd. of Parole*, 788 F. Supp. 14, 15 (D.D.C. 1992)). Relatedly, even if the Committee had sufficiently alleged that the Statue's removal deprived it of an individual interest subject to due process protection, its apparent assumption that the scope of the process required by the U.S. Constitution would be

defined by the provisions of the Philadelphia Home Rule Charter is also incorrect. *See Steele*, 855 F.3d at 509 ("a court must determine the level of process due by drawing from federal constitutional law, not from state laws, regulations, or policies"). Accordingly, Plaintiff has failed to state a procedural due process claim, and Defendants' Motion to Dismiss that claim must be granted.

### B.     Substantive Due Process Claim

The Committee's Brief in Opposition to Defendants' Motion to Dismiss also argues that its substantive due process rights have been violated by Defendants. As the Third Circuit has explained, "the fabric of substantive due process, as woven by our courts, encompasses at least two very different threads." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000). "The first thread of substantive due process applies when a plaintiff challenges the validity of a *legislative* act." *Nicholas*, 227 F.3d at 139. "The second thread of substantive due process . . . protects against certain types of *non-legislative* state action." *Id. See also Dunmore Sch. Dist. v. Pa. Interscholastic Athletic Ass'n*, 505 F. Supp. 3d 447, 461 (M.D. Pa. 2020) ("the distinction between legislative acts and non-legislative or executive acts is crucial") (quoting *Nicholas*).

> To prevail on a non-legislative substantive due process claim, a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies. The text of the Fourteenth Amendment speaks of "property" without qualification, and it is well-settled that state-created property interests, including some contract rights, are entitled to protection under the procedural component of the Due Process Clause. However, not all property interests worthy of procedural due process protection are protected by the concept of substantive due process. Rather, to state a substantive due process claim, a plaintiff must have been deprived of a *particular quality* of property interest. . . . [W]hether a certain property interest embodies this "particular quality" is not determined by reference to state law, but rather depends on whether that interest is "fundamental" under the United States Constitution.

*Nicholas*, 227 F.3d at 139–40 (internal quotation marks and citations omitted). In *Nicholas*, the Third Circuit explicitly stated that it has "limited non-legislative substantive due process review to cases involving real property ownership." *Id.* at 141 (citing *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 600 (3d Cir. 1995) ("[land] ownership is a property interest worthy of substantive due process protection")). As the plaintiff's alleged right in that case was "a wholly state-created contract right" that did not implicate land ownership, the court held that it did not trigger substantive due process protection. *Id.* at 142–43 (citing *Local 342, Long Island Public Serv. Employees v. Town Bd. of Huntington*, 31 F.3d 1191, 1196 (2d Cir. 1994) ("We do not think, however, that simple, state-law contractual rights, without more, are worthy of substantive due process protection."); *Kauth v. Hartford Ins. Co. of Illinois*, 852 F.2d 951, 958 (7th Cir. 1988) ("In cases where the plaintiff complains that he has been unreasonably deprived of a state-created property interest . . . the plaintiff has not stated a substantive due process claim.")). The Third Circuit reaffirmed this limitation in *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 155 (3d Cir. 2018) ("the only protected property interests we have thus far deemed fundamental involved ownership of real property"). *See also Murray v. City of Phila.*, 481 F. Supp. 3d 461, 472 (E.D. Pa. 2020) (same).

Given this clear precedent, and the fact that Plaintiff's claim in this case in no way implicates the ownership of land, its claim based on substantive due process principles must fail. Plaintiff makes no argument that the Statue should be considered "real property," nor does this Court believe it reasonably could have done so. In fact, Plaintiff impliedly alleges otherwise in its Complaint. *See* Compl. at ¶ 44 (alleging Defendants violated a provision of the Philadelphia Code pertaining to the receipt and return of "personal property"); *cf.* PERSONAL PROPERTY, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Any movable or intangible thing that is subject to

ownership and not classified as real property."). Nor does Plaintiff argue that the scope of substantive due process protection established by the Third Circuit should be expanded in the context of claims involving non-legislative state action, and the Court will not do so on its behalf. Rather, Plaintiff's argument that it has sufficiently pled a violation of a substantive due process right is based entirely on its assertion that it possesses a property interest in the Statue stemming from the Philadelphia Home Rule Charter and its contract with the City. *See* Pl.'s Opp'n Br. at 12–14. But state-law created rights have nothing to do with whether an interest is deemed "fundamental" under the United States Constitution, and whether that interest therefore implicates substantive due process considerations. Accordingly, as Plaintiff has not alleged a deprivation of a fundamental right under the U.S. Constitution, substantive due process is not implicated, and Plaintiff's claim must be dismissed.[2]

---

[2] Plaintiff's Brief, at times, cites standards applicable to substantive due process claims challenging *legislative* acts. *See* Pl.'s Opp'n Br. at 11–12. However, Plaintiff does not argue that the actions it challenges in this case should be considered legislative—as opposed to non-legislative or executive in nature—and, indeed, it makes certain arguments that are relevant only in the context of assessing non-legislative or executive acts. *See, e.g.*, *id.* at 14 ("The Third Circuit has held that executive action violates substantive due process only when it shocks the conscience but that the meaning of this standard varies depending on the factual context.") (internal quotation marks omitted); *cf. Adams Outdoor Adver. Ltd. P'ship v. Pa. Dep't of Transp.*, 307 F. Supp. 3d 380, 394 (E.D. Pa. 2018) ("the 'shocks the conscience' test applies only to substantive due process claims for non-legislative actions"). But even if Defendants' challenged conduct was somehow considered a legislative act, that would still not turn Plaintiff's allegations into a properly-pled substantive due process claim, as "'a legislative act will withstand substantive due process challenge if the government identifies the legitimate state interest that the legislature could rationally conclude was served by the statute.'" *Adams*, 307 F. Supp. 3d at 395 (quoting *Cty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 169 (3d Cir. 2006)). Here, the legitimate state interest served by the Emergency Order is clear on the face of the order itself. In the midst of protests taking place in the City, "the Statue was subject to numerous attempts by enormous crowds to demolish, light on fire, excavate, smash, break, and topple it—risking severe injury and death to nearby persons and causing damage to other City property"; as the City "expected [the Statue] to remain the target of further [such] attempts[,] . . . risking injury and death, further damage to City property, and unnecessary diversion of City and other resources during th[at] time of crisis," it determined that "immediate removal of the Statue [wa]s necessary to protect the health, safety, and welfare of Philadelphians and City employees."

## C. Remaining State Law Claims

As Plaintiff's federal claim under § 1983 must be dismissed due to its failure to plausibly allege any substantive or procedural due process violation under the Fourteenth Amendment, the jurisdictional basis for Defendants' removal of this matter to federal court has been eliminated. A district court "'may decline to exercise supplemental jurisdiction' over state law claims if it has 'dismissed all claims over which it has original jurisdiction . . . .'" *Stone v. Martin*, 720 F. App'x 132, 136 (3d Cir. 2017) (quoting 28 U.S.C. § 1367(c)(3)). A court "'*must* decline' to exercise supplemental jurisdiction in such circumstances 'unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" *Stone*, 720 F. App'x at 136 (quoting *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)). "When all federal claims are eliminated before trial, 'the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Hall-Wadley v. Maintenance Dep't*, 386 F. Supp. 3d 512, 519 (E.D. Pa. 2019) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). *See also Herbert v. Cty. of Essex*, Civ. A. No. 19-20409, 2021 WL 3047028, at *2 (D.N.J. July 20, 2021) ("Indeed, it is the norm that a federal court will decline to exercise jurisdiction when the only federal claim is no longer viable, and the case has not progressed substantially.").

---

Pl.'s Opp'n at Ex. F. In its Brief, Plaintiff does not argue that the health and safety concerns cited in the Emergency Order are not actually legitimate state interests, nor does it contend that those interests were not in fact served by the Statue's removal. It simply proclaims that the Statue's removal was unrelated to a government interest based on nothing more than its own say-so. *See* Pl.'s Opp'n Br. at 11–12. The Court also notes that Plaintiff's argument concerning Defendants' purported "improper motive" appears to be based on a legal standard that is no longer the law in this circuit. *See id.* at 11–12; *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 401–02 (3d Cir. 2003) (abrogating "improper motive" standard).

10

Here, as this matter is merely at the motion to dismiss stage, and the remaining claims in Plaintiff's Complaint raise questions of state law only, the Court finds that all relevant factors compel it to decline to exercise jurisdiction over Plaintiff's remaining claims. Accordingly, this matter will be remanded back to state court. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").[3]

### IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Count III of Plaintiff's Complaint raising a claim under 42 U.S.C. § 1983 will be granted. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, and the matter will be remanded back to the Philadelphia County Court of Common Pleas.

An appropriate order follows.

**BY THE COURT:**

/s/ C. Darnell Jones, II
**C. Darnell Jones, II  J.**

---

[3] As this Court does not reach Plaintiff's remaining state law claims, the Court expresses no view as to which party's interpretation of the Agreement should win the day. However, it is clear that Plaintiff has at least a colorable claim with respect to its right to reclaim the Statue under Section 7(f) of the Agreement. Accordingly, the Court fully expects that Defendants will not take any action to alter or destroy the Statue until either a settlement agreement is reached with Plaintiff, or a court has rendered a judgment as to Plaintiff's remaining claims. Counsel for Defendants have specifically represented to this Court that "the City does not have—nor has it ever had—any plans to destroy the Statue." Defs.' Letter to Court (ECF No. 4). Defendants' counsel has also represented that the City would maintain the Statue in a secure location until it formulates a proposal for what to do with the Statue, at which time it would engage with the Philadelphia Art Commission and the public—including the Committee—regarding the proposal. As the scope of the parties' respective rights under the Agreement will presumably continue to be litigated in state court, any action on Defendants' part to alter or destroy the Statue before a judgment is reached or a settlement agreement is entered into, would, in this Court's opinion, likely call for the imposition of sanctions.